Ferris J. ALEXANDER and Benedict Jochim, Plaintiffs,

and

Vegas Cinema Corporation of Minneapolis, Inc., dba Avalon Theatre, Plaintiff-Intervenor,

v.

CITY OF MINNEAPOLIS, a municipal corporation; William A. Nordrum, Jr., individually and as Zoning Supervisor for the City of Minneapolis; and Anthony Bouza, individually and as Chief of Police of the City of Minneapolis, Defendants.

Civ. No. 4-81-337.

United States District Court,
D. Minnesota,
Fourth Division.

May 5, 1982.

Randall D. B. Tigue, Minneapolis, Minn., for plaintiffs Alexander and Jochim.

John H. Weston, Brown, Weston & Sarno, Beverly Hills, Cal., for plaintiff-intervenor Vegas Cinema Corp.

Allen B. Hyatt, Asst. City Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER FOR ATTORNEYS' FEES AND COSTS

DIANA E. MURPHY, District Judge.

This matter now comes before the court on plaintiffs' motions for attorneys' fees and costs under 42 U.S.C. § 1988. A final judgment on the merits has previously been entered, granting plaintiffs declaratory and injunctive relief in their § 1983 action. 531 F.Supp. 1162. Defendants concede that plaintiffs are prevailing parties entitled to recover reasonable attorneys' fees and costs under 42 U.S.C. § 1988. They also concede that the total costs sought, $7,641.68, are reasonable.[1] The parties disagree, however, as to the proper amount the court should award as reasonable attorneys' fees.

This action was commenced by plaintiffs Alexander and Jochim on June 23, 1981, who sought an immediate temporary restraining order. After hearing, a restrain-

---

1. This amount includes $6,659.62 in costs requested in plaintiffs' initial application; the balance represents mainly costs incurred in relation to the subsequent hearing.

ing order was entered on June 30, 1981. The parties agreed to consolidate the motion for a preliminary injunction with a trial on the merits. Discovery was conducted, and the trial date was continued twice at the request of the defendants so that they could adequately prepare. Vegas Cinema Corporation (Avalon) joined as plaintiff-intervenor, and the Minnesota Civil Liberties Union filed an amicus curiae brief. Prior to trial legal memoranda were submitted addressing a number of constitutional issues. Trial took five days; thirteen witnesses testified, and forty-seven exhibits were received into evidence. Upon conclusion of the trial the parties requested, and received, leave to file post-trial memoranda, as well as proposed findings and conclusions. The court subsequently ruled in plaintiffs' favor but found it unnecessary to address all the constitutional issues they raised. Plaintiffs then brought their application for fees and costs; memoranda and affidavits were submitted, a lengthy hearing was held, and the parties were allowed to submit post-hearing materials.

Fees are sought for the services of four attorneys. Attorney Randall D. B. Tigue represented plaintiffs Alexander and Jochim throughout. He brought the original action on their behalf and appeared at trial for intervenor Avalon. Tigue represented himself and attorney Benjamin Houge in this attorneys' fee action. Houge appeared at trial and assisted Tigue but did not question witnesses, present evidence, make objections, or make arguments to the court. Tigue and Houge had a quasi-contingency fee arrangement with Alexander; they received $3,600 and $500 respectively, with any additional fees to come from a § 1988 application if plaintiffs prevailed. John H. Weston and his associate, Robert DePiano, of Beverly Hills, California, represented Avalon. They consulted with Tigue to follow the developments related to trial. Weston appeared before the court on Avalon's motion for attorney's fees. Both Weston

and DePiano were paid on an hourly basis by Avalon; Weston stated at the hearing that Avalon was billed $150 per hour for his work and $80 per hour for DePiano.

Plaintiffs claim a total of $31,539.50 in fees, and defendants take the position that the fees award should be limited to $13,888.[2] Plaintiffs' claim for each attorney is: Randall Tigue, $16,287.50; Benjamin Houge, $4,000; John Weston, $5,460; Robert DePiano, $5,792. Defendants do not object to the following amounts: Randall Tigue, $8,720; Benjamin Houge, $216;[3] John Weston, $2,912; Robert DePiano, $2,040.

### 1. Randall D. B. Tigue

The initial determination for the court is to establish the lodestar or base fee for Tigue's services. "[T]he minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate." *Zoll v. Allamakee Community School District,* 588 F.2d 246, 252 (8th Cir. 1978). Tigue claims 130.3 hours and a regular hourly rate of $90. Defendants object both to the hourly rate, which they claim should be $80, and to the number of hours claimed, which they ask to be reduced by 21.4 hours.

First, defendants argue that Tigue's fee should be limited to $80 per hour, the base rate awarded for senior attorneys in *Jorstad v. I. D. S. Realty Trust,* 643 F.2d 1305 (8th Cir. 1981). The *Jorstad* rate, however, was for services rendered in 1978. At the hearing, defendants' counsel conceded that a reasonable award would recognize an adjustment for inflation for services rendered in 1981. Tigue's hourly rate was for services rendered in 1981 and 1982. The request for $90 per hour is reasonable even under defendants' standard and is an appropriate base rate.

Defendants also ask that the number of hours claimed for the lodestar fee be reduced by 21.4 hours. The court has re-

---

**2.** This amount includes the hours requested by plaintiffs for work on the fee applications; defendants have made no objection to this part of Tigue's and Weston's requests.

**3.** Defense counsel stated at the hearing that he would have no objection to Houge's being awarded the same hourly rate for his work at trial as his own trial assistant, i.e. $5.40.

viewed Tigue's affidavit of hours spent and finds them to be reasonable. Time reasonably spent in trying to settle or in preparing for trial by seeking experts and evidence, even if not used at trial, is associated with the thorough preparation of a lawsuit. The small amount of time spent monitoring the progress of a state court action involving the same ordinance was also reasonable.

The largest block of Tigue's time to which defendants object is 7.1 hours that they estimate he spent on an establishment of religion argument never reached by the court. Plaintiffs are entitled to recover for time spent on arguments which may prove unsuccessful unless they are "clearly frivolous, or 'manufactured.'" *Brown v. Bathke*, 588 F.2d 634, 635, 637 (8th Cir. 1978). Moreover, defendants' estimate of time spent on this issue is purely speculative, and they declined the opportunity of examining Tigue's time records. The record does not justify reducing the number of hours requested.

The lodestar fee for services rendered by Tigue is therefore $11,727 (130.3 hours at an hourly rate of $90).

Tigue seeks enhancement of the hourly rate to $125, but defendants object to any enhancement based upon the factors[4] in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), recognized in *Brown v. Bathke*, 588 F.2d 634 (8th Cir. 1978).

Tigue's claims of adverse consequences, by reason of the unpopularity of the case and of a loss of business by accepting it, are too speculative to support enhancement. His reputation with the bench and bar of this community is very good, and the court has seen no evidence of any ill effects for him due to this litigation.

Defendants' argument that Tigue will benefit from increased business from others seeking to challenge Minneapolis Code of Ordinances § 540.410 is also speculative. To date Tigue has received no such business. Defendants also contend now that this litigation presented a simple legal question similar to cases decided elsewhere, such as *Purple Onion, Inc. v. Jackson*, 511 F.Supp. 1207 (N.D.Ga.1981). This is inconsistent with the record and their position at trial when they stressed the special features of the ordinance in question.

The court does consider one factor to be a compelling ground for enhancement here— the quality and diligence of Tigue's work. Since the lodestar fee is based on a rate that takes into account his experience and expertise, a reasonable enhancement of the hourly fee is $10. This brings the total award of attorney's fees for Tigue to $13,030.

### 2. Benjamin S. Houge

Houge's service as second chair at trial justifies the recovery of fees for 21.5 hours spent during the time of trial. An additional 2.7 hours appears to have been spent in the development of a videotape presentation for which Houge appears to have had primary responsibility. The request for these 24.2 hours is reasonable.

The other hours requested for his services cannot be allowed on the record before the court, however. The time records submitted are not sufficiently detailed to allow the court to evaluate most of the time spent outside of trial, and the affidavits are insufficient to establish the reasonable nature or value of such services.

Houge's normal billing rate of $85 per hour for First Amendment litigation should be adjusted to reflect the limited and secondary role he played. While Houge con-

---

**4.** The factors are:

"(1) The time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (2) awards in similar cases."
488 F.2d at 717–719.

ferred with Tigue during trial from time to time, he played no part in the examination of witnesses, the making of objections, or the presentation of argument to the court. Plaintiffs concede that such secondary participation justifies diminution of the hourly rate.

The factors urged for enhancement of Houge's rate are unpersuasive. The unpopularity of this case would have very little effect on him since his involvement was of such a low profile, nor does the risk of Houge's contingency arrangement appear great since his role was so limited.

The court finds that a reasonable attorney's fee for the services of Houge is $1,694. This amount represents compensation for 24.2 hours at an hourly rate of $70.

### 3. John H. Weston

Plaintiff-intervenor Avalon Theatre of Minneapolis seeks to recover fees for Weston's services for 36.4 hours at an hourly rate of $150.[5] These hours were actually billed and paid by Avalon for its counsel from Beverly Hills, California. Defendants concede that the total hours are reasonable [6] but argue that the hourly rate is excessive in light of local fees and Tigue's representation of Avalon at trial. Defendants argue that Weston's rate should not be greater than local counsel's since he did not participate in trial and played a limited role in consulting with Minneapolis counsel and supervising the work of a junior attorney in his office.

■ It is within the court's discretion to award a lower hourly rate to expensive out-of-town counsel where there is no reason to believe that services of equal quality are unavailable in the locality in which the case is tried. *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 768–69 (7th Cir. 1982). *Cf.*

*Jorstad v. I. D. S. Realty Trust,* 643 F.2d 1305 (8th Cir. 1981).

■ Weston is an able attorney and has unusual expertise and experience in the area of First Amendment law, but Tigue's excellent representation of plaintiffs, including Avalon, is testimony to the fact that attorneys of comparable quality in the First Amendment area are available in this community. Undoubtedly a Beverly Hills law firm incurs costs and competes in a local market that justifies hourly rates of up to $190. Nonetheless, reasonableness suggests that a party that chooses more expensive out-of-town counsel when equally able local counsel is available should not pass the added cost of that choice on in an attorneys' fee action in the absence of a compelling reason to the contrary. Avalon has made no such showing.

Although Weston did not participate at trial, his experience and expertise justify a rate comparable to that given for the services of Tigue. A reasonable hourly rate for the services of Weston in the circumstances of this case is $100. Since defendants do not contest the number of hours requested for Weston's services (36.4), Avalon is entitled to $3,640 in attorneys' fees for the services of Mr. Weston.

### 4. Robert E. DePiano

■ Avalon requests attorney fees for DePiano, an associate of Weston's, for a total of 72.4 hours at an hourly rate of $80.[7] Defendants object to both the hourly rate and the number of hours requested. They contend that DePiano's limited experience (1.5 years at the time he first worked on the case) and his duplication of Tigue's efforts warrant trimming 21.4 hours and reducing the hourly rate to $40.

---

**5.** Originally Avalon moved for fees based upon Weston's hourly billing rates of $150, $170, and $190 for the various periods in question. At the hearing on the motion for attorney's fees and in post-hearing correspondence, Weston requested $150 per hour based upon the actual rate billed and paid by his client.

**6.** Nearly two-thirds of the total amount of hours sought by Avalon relate to the attorneys' fee application. Avalon had offered to settle its

fee claim, but the defendants refused. Defendants do not claim that time spent on the fee application is unreasonable.

**7.** Originally Avalon moved for fees based upon DePiano's hourly rates of $85 and $90 for the various periods in question. Avalon now requests $80 per hour based upon the actual rate billed and paid.

For the reasons previously discussed, reasonableness requires a reduction in DePiano's hourly rate from that which is charged for a junior attorney in Beverly Hills. Moreover, DePiano has the least experience of any of the attorneys involved in this case and has played a limited role. An hourly rate of $60 is reasonable in the circumstances of this case for his level of experience and the nature of the work done.

Defendants object to the total number of hours claimed on the ground that much of the work done by DePiano duplicated that done by Tigue. In particular, the time spent on the complaint, proposed findings of fact and conclusions of law, and the statement of the case, appear to be largely duplicative of Tigue's work, and therefore some of this time should be disallowed. These pleadings and submissions were substantially the same as Tigue's. It appears from the imprecise affidavit that a total of 17.8 hours were spent on matters relating to the complaint. In the circumstances, 8 of the hours spent on the complaint should be disallowed. Another 4.5 hours were spent on duplicative findings of fact and conclusions of law and a statement of the case; 2 of these hours should be disallowed.

Defendants' counsel suggested at the hearing that intervenor's interests were represented well enough by Alexander and Jochim to render intervenor's separate involvement unnecessary. However, Avalon and Alexander were competitors challenging an ordinance that placed them in further competition for the continuation of their businesses, and Avalon took appropriate steps to limit its use of separate counsel.

A reasonable award for DePiano's services is $3,744, an amount representing $60 per hour for 62.4 hours.

Accordingly, based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendant City of Minneapolis pay the plaintiffs the following attorney's fees:
   a. For the services of Randall D. B. Tigue, $13,030;
   b. For the services of Benjamin S. Houge, $1,694;
   c. For the services of John H. Weston, $3,640;
   d. For the services of Robert DePiano, $3,744.
2. Defendant City of Minneapolis pay the plaintiffs the following costs:
   a. Costs incurred by Randall D. B. Tigue, $5,369.74;
   b. Costs incurred by Benjamin S. Houge, $20.31;
   c. Costs incurred by John H. Weston and Robert DePiano, $2,251.63.

LET JUDGMENT BE ENTERED ACCORDINGLY.